UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE  DIVISION

| | | |
|---|---|---|
| RALPH DAVID VANEATON and | ) | |
| GLORIA J. VANEATON, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 3:04-cv-112 RLY/WGH |
| | ) | |
| GLIMCHER PROPERTIES, LP, | ) | |
| Defendant. | ) | |

**ENTRY ON GLIMCHER PROPERTIES, LP'S MOTION FOR SUMMARY
JUDGMENT**

This matter is before the court on Defendant Glimcher Properties, LP's

("Glimcher") Motion for Summary Judgment.  For the following reasons, Glimcher's

Motion is **granted in part** and **denied in part**.

## I.      Background

Plaintiffs, Ralph David and Gloria VanEaton ("Plaintiffs"), own property in

Vincennes, Indiana.  In January 1973 they entered into an Amended Ground Lease

("the Lease") on the property with the understanding that the Tenant under that lease, or

its assignee, would be developing the vacant land by constructing a commercial building

or buildings and leasing the premises to businesses.  Specifically, it was contemplated

that the S.S. Kresge Company (predecessor to K-Mart) was interested in locating a store

at the property and willing to execute a long term sublease with the Tenant.  Shortly after

the Lease was executed, a K-Mart store was established on the premises.  K-Mart has

1

been a long term sub-lessee ever since.

The Lease was initially for a period of twenty-five years from the opening of the contemplated store.  It currently remains in effect pursuant to one of a series of five optional ten year extensions granted the Tenant, such that the Lease could run for a total of seventy-five (75) years.  The Lease was also written so that it could be freely assigned, and it has been sold and assigned several times.  Defendant Glimcher Properties, LP became the Tenant by assignment from a related partnership in 2000 and is the current Tenant.

The rental provision of the Lease is at the heart of the controversy in this case.  In pertinent part it provides:

> . . . As rental for said demised premises, TENANT agrees to pay, and LANDLORDS agree to accept, the following amount
>
> A. Commencing on the date upon which rental hereunder commences to accrue and continuing thereafter during the term and any extension of the term of this lease, rental shall be at the rate and in the amount of One Thousand Two Hundred Dollars ($1,200.00) per month and shall be payable monthly in advance; and
>
> B. In addition to the fixed rental specified in Paragraph A above, twenty-five percent (25% of all "overage or percentage" rents (hereinafter defined), *if any*, paid to TENANT by subtenants of said premises.  After LANDLORDS become entitled to payment of said "overage or percentage" rents, TENANT shall transmit to LANDLORDS, concurrently with the payment of each instalment (sic) of fixed or minimum rental, LANDLORDS' proportionate part of all such overage or percentage rental received prior to ten (10) days prior to the due date of such fixed or minimum rental instalment (sic) (and with respect to which TENANT has not previously paid to LANDLORDS, LANDLORDS' proportionate share).
>
> The term "overage or percentage" rentals as used herein means and refers to

rentals payable by a subtenant or subtenants which are in addition to and in excess of fixed minimum rentals and are computed with respect to or upon the basis of a percentage of the amount of sales or income of such subtenant or subtenants in excess of a basic or minimum amount of such sales, all as shall be set forth in subleases made and entered into by and between TENANT hereunder and subtenants of designated portions of the demised premises.  TENANT agrees that TENANT will promptly furnish to LANDLORDS copies of all statements furnished to TENANT by subtenants showing amounts of gross sales or gross income of such subtenants and computations of such overage or percentage rentals. TENANT further agrees to timely furnish to LANDLORDS copies of rental provisions of subleases which contain provisions for payment of overage or percentage rentals showing how such overage or percentage rentals are to be computed and when the same are to be paid.  LANDLORDS shall have the right at all reasonable times to audit, at LANDLORDS' expense, the books and records of TENANT pertaining to the receipt and payment of such overage or percentage rentals.

 (Ex. 3)(emphasis added).

For almost twenty-seven years, the subleases utilized by the Tenant, including the Defendant Glimcher, contained the overage or percentage rental provisions referred to in the Lease.  In 2002, Glimcher entered into a sublease with Charter Communications for a portion of the premises.  The Charter Communications sublease contains no overage or percentage rental provisions because Charter does not use the space for retail or wholesale sales.

In 2003, despite its receipt of an estimated $235,000 in rent payments from its sub-tenants under the new sublease, Glimcher paid Plaintiffs only the $14,400 called for as fixed rent under the Lease.  Plaintiffs sent notice of default to Glimcher pursuant to the Lease, but Glimcher claims that there is nothing in the Lease that requires it to include an overage or percentage rental provision in its subleases.  The VanEatons' Amended

Complaint alleges two Counts: (I) that Glimcher is in default because its sublease to Charter does not include an overage rent provision and (II) that Glimcher owes the VanEatons $6,746.88 from its sublease to K-Mart.

## II.     Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if it is outcome determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine "only when a reasonable jury could find for the party opposing the motion based on the record as a whole."  *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999).

In determining whether a genuine issue of material fact exists, the court views the record and all reasonable inferences in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).  The moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The non-moving party may not, however, simply rest on the pleadings, but must demonstrate by specific factual allegations that a genuine issue of material fact exists for trial.  *Green v. Whiteco Industries, Inc.*,  17 F.3d 199, 201 (7th Cir. 1994) (citing *Celotex*, 477 U.S. at 322).

### III.   Discussion

### A.   Claim I: The Charter Sublease

Regarding Claim I, the VanEatons argue that the Lease requires an overage or percentage rental provision in all subleases and that the existence of such sublease provisions is a key to the integrity of the Lease; otherwise, there would have been a Consumer Price Index adjustment clause included in the Lease or some other manner of assuring that payments to Plaintiffs were in line with market value.  Glimcher responds that the Lease clearly states that the fixed rental payments are supplemented by overage or percentage rental payments "if any" are received by Tenant.  According to Glimcher, the use of the phrase "if any" contemplates that there may or may not be such rents included in or collected through the sublease.

Glimcher raised its argument about the meaning of "if any" in a Motion to Dismiss, which this court denied on June 7, 2005, reasoning that "the 'if any' language clearly could refer to the fact that the threshold sales figure may not be reached and therefore the overage <u>payment</u> would be left untriggered."  (Entry on Defendant's Motion to Dismiss at 5).  Glimcher now raises a similar argument in its Motion for Summary Judgment.

It is still the case that the "if any" language could be interpreted as allowing for the possibility that the overage payment would be provided for in the sublease but not triggered by a given year's sales.  However, even if the court interpreted "if any" in this way, the fact remains that the Lease offers no formula for figuring the overage rent.

5

Glimcher could create an overage formula that would never generate overage rent and yet be in compliance with the Lease.  In this way, the VanEatons' interpretation of "if any" becomes senseless, as they would be unable to establish any damages flowing from Glimcher's default.

In its Entry on Glimcher's Motion to Dismiss, the court found that this line of reasoning was inconclusive under the Motion to Dismiss standard, because there might be evidence of "a standard industry formula, a recognized obligation of good faith or any other contingency which might affect the interpretation of the Lease and which Glimcher may have been aware of at the time it was assigned the Lease."  At this time, however, the VanEatons have presented no such evidence.  As explained above, the VanEatons may not simply rest on the pleadings, but must demonstrate by specific factual allegations that a genuine issue of material fact exists for trial.  *Green v. Whiteco Industries, Inc.*, 17 F.3d 199, 201 (7th Cir. 1994) (citing *Celotex*, 477 U.S. at 322).  Therefore, Glimcher's Motion for Summary Judgment must be granted as to Count I.

## B.      Claim II: The K-Mart Math

Regarding Claim II, the VanEatons argue that they are owed overage rents from the K-Mart lease for the June 2000 through June 2004 time period.  According to the VanEatons, K-Mart "miscalculated the expansion adjustments in analyzing the adjusted sales number to use."  (VanEatons' Answer to Defendant's Motion for Summary Judgment as to Count II Only at 3).  As such, K-Mart underpaid Glimcher by $24,507.82, $6,746.75 of which should have gone to the VanEatons.  Glimcher counters that K-Mart

6

does not owe any overage rents because the credits that K-Mart receives for the payment of taxes exceed the overage rents under the sublease.  (*See* Ex. 8, Arapahoe Corporation and S.S. Kressge November 7, 1972 Lease).  The court finds that the VanEatons have raised a genuine issue of material fact regarding the proper calculation of the overage rent and, thus, summary judgment of Claim II is inappropriate.

## IV.    Conclusion

For the foregoing reasons, Defendant Glimcher Properties, LP's Motion for Summary Judgment is **granted in part**, as to Claim I, and **denied in part**, as to Claim II.

Dated:  September 8, 2005.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

L. Edward Cummings
HART BELL LLC
ecummings@hartbell.com

Nathaniel Mark Ewing
HART BELL LLC
mewing@hartbell.com

Max Eric Fiester
RUDOLPH FINE PORTER & JOHNSON
mef@rfpj.com

7

Michael R. Reed
SQUIRE SANDERS & DEMPSEY LLP
mreed@ssd.com

Ross E. Rudolph
RUDOLPH FINE PORTER & JOHNSON
rer@rfpj.com